LAWRENCE G. WASDEN
ATTORNEY GENERAL

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

CYNTHIA YEE-WALLACE, ISB #6793
MEGAN A. LARRONDO, ISB #10597
Deputy Attorneys General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:     (208) 334-2400
Facsimile:     (208) 854-8073
cynthia.wallace@ag.idaho.gov
megan.larrondo@ag.idaho.gov

TRUDY HANSON FOUSER, ISB #2794
EMMA C. NOWACKI, ISB #10742
GJORDING FOUSER, PLLC
Plaza One Twenty One
121 N. 9th Street, Suite 600
Boise, ID  83702
Telephone:     (208) 336-9777
Facsimile:     (208) 336-9177
tfouser@gfidaholaw.com
enowacki@gfidaholaw.com

Attorneys for Defendants State of Idaho; Idaho Department of
Health and Welfare, including the Southwest Idaho Treatment Center;
Jamie Newton; Billy King; Debra Luper; and Debra Combs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| ERIKA DREYER, as parent and natural guardian of B.B., et al., | Case No. 1:19-cv-00211-DCN |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
| v. |  |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, an agency of the State of Idaho, et al., |  |
| Defendants. |  |

Defendants State of Idaho, the Idaho Department of Health and Welfare, including the

Southwest Idaho Treatment Center, Jamie Newton, Billy King, Debra Luper, and Debra Combs

submit this memorandum in support of their motion to dismiss filed herewith, asking this Court

to dismiss almost all of Plaintiffs' Amended Class Action Complaint and Request for Injunctive Relief (Dkt. 7), filed in this case on July 8, 2019 ("Complaint").[1]

## I.     INTRODUCTION

The Southwest Idaho Treatment Center ("SWITC") is unlike any other state-run institution in Idaho.  It is not a hospital.  It is not a penal institution.  It is not a mental health facility, where the primary focus is psychiatric care.  SWITC's mission is more complex: it offers short-term crisis care for individuals with intellectual and developmental disabilities ("I/DD") who also have some combination of medical, behavioral, and mental health needs.  (Compl. Ex. B at 12-13, 15.)  This lawsuit centers around the short-term care provided to six Plaintiffs when they were residents at SWITC.

SWITC has been in existence since the early 1900s.  (*Id*. at 9.)  The SWITC campus was originally a 600-acre long-term placement facility that could house 1,000 residents.  (*See id*.)  In 2009, however, Idaho developed and implemented an *Olmstead* plan[2] aimed at transitioning SWITC's residents, some of whom had lived at SWITC for years, into the community.  (*See* Compl. Ex. B at 12.)  The result of this monumental effort was the reduction of numerous individuals placed at SWITC, to the less than 20 people who reside there now.  (*Id*. at 10, 12.)  Today, SWITC has the fewest clients of any state-operated intermediate care facility for individuals with I/DD in the nation.  (*Id*. at 18.)

---

[1] In filing this motion, Defendants do not waive any sovereign immunity defenses to this lawsuit.  Nor do Defendants waive any defenses based upon the lack of supplemental jurisdiction.  Defendants reserve the right to file a motion asserting these defenses, beyond the statutory defense raised in this motion, once Plaintiffs' allegations and claims have been refined.

[2] An *Olmstead* plan is a state's plan to deinstitutionalize individuals with I/DD and increase the number of those individuals utilizing community-based support.  It derives from the U.S. Supreme Court's landmark decision in *Olmstead v. L.C. ex rel Zimring*, 527 U.S. 581 (1999).

The individuals currently at SWITC are there because they have unique and complex needs that cannot be met in the community.  All of the individuals at SWITC have an I/DD, which is a cognitive impairment.  Some residents have been committed to the care of the Idaho Department of Health and Welfare ("DHW") due to criminal activity or because they have been found to be a threat to themselves or others.  (*See* Compl. Ex. B at 8-10.)  They may have a history of engaging in significant physical or sexual assault, self-injurious behavior, or ingestion of inedible objects.  (*Id*. at 13.)  Other individuals are at SWITC because there is no other available community-based support that can successfully provide their care; SWITC becomes their safety-net.  (*See id*.)  Some residents also have unusually high medical needs, including complex seizure disorders.  (*Id*.)  Residents at SWITC also tend to have both an I/DD and a mental health diagnosis, such as schizophrenia, bipolar disorder, borderline personality disorder, and posttraumatic stress disorder.  (*Id*.)  Because the needs of SWITC's residents are so complex, their care at SWITC is highly individualized and multi-faceted.

SWITC's mission is to support individuals with I/DD to become stable, develop skills, and successfully transition to the community.  (*Id*. at 12-13.)  It takes a number of qualified staff to get clients to that point.  While working at SWITC can be an extremely rewarding experience, SWITC is not a job for everyone.  Staff at SWITC are spit on, assaulted weekly, threatened, cursed at, subjected to racial and/or homophobic epithets, and have received serious injuries on the job from residents.  (*Id*. at 40.)  Staff members have suffered serious head injuries, wounds from human bites that would not heal, sexual assault, and attempted rape.  (*Id*.)  Yet some of the staff at SWITC have been there for years, managing these job challenges because they have compassion and a deep affection for SWITC's clients.  (*See id*. at 33, 80.)

The year of 2017 contained a summer of black swan events at SWITC.  There was resident Drew Rinehart's suicide, SWITC failed two surveys performed by DHW, and six staff members left or were fired following substantiated abuse allegations against SWITC residents. (*See id*. at 31.)  The aftermath of these events undermined staff morale, trust, and focus on SWITC's long-term goals, which was exacerbated by media coverage.  (*Id*.)

When SWITC became aware of the abuse allegations in 2017, it took immediate steps to be transparent and proactive in responding.  Among other things, DHW alerted DisAbility Rights Idaho ("DRI"), an advocacy and protection group with federal authority to monitor and investigate conditions in facilities that serve individuals with I/DD, and shared thousands of pages of documents with them.  (*Id*. at 21; Compl. Ex. A at 6-8, 14.)  DRI reviewed those documents and drafted the report attached as Exhibit A to Plaintiffs' Complaint—using it as an opportunity to publicize its political opposition to the Legislature's 2017 approval to create a secure facility at SWITC.  (Compl. Ex. A at 9-11, 14-15, 38-39.)  The Office of Performance Evaluations ("OPE") also completed a report on SWITC's operations, which was conducted in response to a legislative inquiry in March of 2018.[3]  (*Id*. Ex. B.)

Armed with these reports, Plaintiffs' family members and guardians filed this lawsuit, asserting federal law claims and a number of individual state law claims against Defendants.  Six Plaintiffs seek money damages and injunctive relief, and propose to certify a class of current and former residents of SWITC who were "subjected to abuse, neglect and mistreatment."  (Compl. ¶ 177(a).)

---

[3] *See generally* Compl. Ex. B.  Unlike the report by DRI, the OPE report was based not only on a review of documents, but was completed after numerous observations at SWITC and interviews with multiple staff, parents, guardians, advocacy groups, and DHW officials.

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS - 4

Notably absent from Plaintiffs' Complaint are the significant, publicly known, and systematic changes made by DHW and SWITC since 2017 to address and improve staff quality, training, and pay; client assessments and programs; treatment standards; communication with adult protection services; SWITC oversight; and its long-term strategic goal planning.  (*Id*. Ex. B at 30, 80.)  Instead, the Complaint alleges a number of legal claims that lack factual and legal plausibility.  For the reasons set forth below, Defendants' motion to dismiss should be granted.

## II.     COMPLAINT ALLEGATIONS

Plaintiffs assert 20 "Counts" against Defendants.  (Compl. at 35-53.)  With the exception of Defendant Jamie Newton, who is sued in her official and individual capacities, all of the individual Defendants are named only in their individual capacities.  (*Id*. at 2; ¶¶ 28, 30-36.)

Out of the 55 pages that comprise Plaintiffs' actual Complaint, only 11 pages contain allegations specific to the six Plaintiffs in this case.  (*Id*. at 21-31.)  And the majority of allegations specific to Plaintiffs are alleged against unidentified or "unknown" SWITC employees, staff, administrators, or officials.  (*Id*. ¶¶ 94-95, 99-101, 103-104, 117, 119, 122-123, 126, 128, 133, 134, 136-138, 140, 143, 146, 148, 152-158, 162, 168-170, 172-173.)  The cursory allegations against Defendants in the Complaint fail to allege sufficient facts to put Defendants on notice of most of the claims in this case.[4]

The following are the specific facts alleged against Mr. King and Mses. Newton, Combs, and Luper.

---

[4] This memorandum does not address any of the factual allegations alleged against Defendant Luke Brisbane because there is no such person with that name who has been served in this case. This memorandum also does not address any of the specific factual allegations against Defendants Burkett, Miller, or Edwards, as they are not represented by the above-named attorneys: Cynthia Yee-Wallace, Megan Larrondo, Trudy Fouser or Emma Nowacki.

- *Defendant Jamie Newton*

In the 328 paragraphs of the Complaint, there is just *one* factual allegation of wrongdoing which identifies Ms. Newton by name.  Specifically, Plaintiffs allege that "**Defendant Jamie Newton**…enforced and had knowledge of a pattern and practice at SWITC that the observation log sheets are not accurate and boxes are checked even though actual client checks were not performed."  (Compl. ¶ 119 (emphasis added).)

- *Defendant Wilmer "Billy" King*

There is also only *one* factual allegation of wrongdoing which identifies Mr. King.  The Complaint states that "Defendant Jason Miller slammed Nathan's nose into a counter causing injury and bleeding and threw him into a chair, while other SWITC members including Eric, Jolene and **Defendant Billy King** watched and observed, but did not intervene or offer assistance."  (*Id.* ¶ 163 (emphasis added).)

- *Defendants Deborah Combs and Debra Luper*

One paragraph of the Complaint alleges wrongdoing by Mses. Combs and Luper.  It states:

> Drew died after **Defendants Luper and Combs**, and other unknown SWITC staff left him unattended, unobserved, and neglected in bed for over 6 hours, despite a requirement for observation checks every 30 minutes, log sheets showing observation checks had actually been conducted on the half hour, and that he had been administered medication at 8:00 a.m. when in fact he had not been observed during such time or provided such medication.

(*Id.* ¶ 119 (emphasis added).)

When analyzed from the perspective of the allegations pled by each Plaintiff, the deficiencies in the pleadings against the individual Defendants are equally apparent.  With respect to the allegations by Plaintiff B.B, *none* are directed toward *any* of the individually named Defendants.  (*Id.* ¶¶ 88-106.)  Similarly, Plaintiffs Michael McNamar, Nickolas Pease,

and Colby Bloom fail to allege any specific facts aimed at Mr. King or Mses. Newton, Luper or Combs.  (*Id*. ¶¶ 124-159, 170-173.)  Plaintiff Nathan Benjamin asserts no specific allegations toward Mses. Newton, Luper or Combs.  (*Id*. ¶¶ 160-169.)  And Drew Rinehart's sister alleges no specific allegations against Mr. King.  (*Id*. ¶¶ 107-123.)

Almost all of Plaintiffs' Complaint should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6) or 12(b)(1), as indicated below.  Counts II through IX, and Counts XII, XIII, and XVI through XVIII (all against the Individual Capacity Defendants) should be dismissed in their entirety, with prejudice, because they are not legally plausible.  Other counts, including the claims alleged by Plaintiff B.B., Counts III and IV (against the State of Idaho, DHW, and Jamie Newton), and Counts X, XI, and XV should be dismissed because they suffer from factual deficiencies which fail to put Defendants on notice of such claims.  Finally, Count XIX should be dismissed for a lack of standing, and the claims alleged against Luke Brisbane should be dismissed because no such person has been served.

## III.    STANDARD

### A.  Rule 12(b)(6) Standard.

"A motion to dismiss for failure to state a claim challenges the legal sufficiency of the claims stated in the complaint."  *Does 1-134 v. Wasden*, No. 1:16-cv-00429-DCN, 2018 WL 2275220, at \*3 (D. Idaho May 17, 2018) (citing *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011)).  "A complaint generally must satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to avoid dismissal under a Rule 12(b)(6) motion."  *Id*. (citations omitted).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

defendant fair notice of what the ... claim is and the grounds upon which it rests[.]'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (additional citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss 'does not need detailed factual allegations,' it must set forth 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Educ. Networks of Am., Inc. v. Wasden*, No. 1:16-cv-00379-BLW, 2017 WL 411206, at *2 (D. Idaho Jan. 30, 2017) (quoting *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation and quotations omitted).

"The Supreme Court identified two 'working principles' that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Id.* "First, the court need not accept as true legal conclusions that are couched as factual allegations. Rule 8 does not 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Id.* (citations omitted). "Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. 'Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (citations omitted). Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555-56 (citations omitted).

### B. Rule 12(b)(1) Standard.

Standing under Article III of the U.S. Constitution is a constitutional limitation on a court's subject matter jurisdiction and cannot be granted by statute. *See Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576-77 (1992)). "Because Article III standing is a true jurisdictional question, rather than a question about the sufficiency of the claim, it is properly addressed in a Rule 12(b)(1) motion." *Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269, 270 (9th Cir. 2009) (citations omitted). A motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) receives *de novo* review. *Doğan v. Barak*, 932 F.3d 888, 892 (9th Cir. 2019) (citation omitted).

## IV.    DISCUSSION

### A. Count II should be dismissed with prejudice because the Idaho Constitution does not provide Plaintiffs with a private right of action.

In Count II of the Complaint, Plaintiffs allege the Individual Capacity Defendants deprived them of "rights, privileges, or immunities secured or protected by [] Article I, Section 7 of the Constitution of the State of Idaho[.]" (Compl. ¶ 195.) However, "[t]here is no 'direct cause of action for violations of the Idaho Constitution.'" *Hamell v. Idaho County*, No. 3:16-CV-00469-EJL, 2017 WL 2870080, at *5 (D. Idaho Jul. 5, 2017) (citing *Kangas v. Wright*, No. 1:15-cv-00577-CWD, 2016 WL 6573943, at *6 (D. Idaho Nov. 4, 2016) and citing *Johnson v. City of Caldwell*, No. 1:13-CV-00492-EJL-CWD, 2015 WL 5319012, at *17 (D. Idaho Sept. 11, 2015)). As a result, Count II is not plausible and should be dismissed with prejudice.

**B.  Counts III and IV should be dismissed against all Defendants.**

Count III alleges a violation of Title II of the Americans with Disabilities Act ("ADA") and Count IV alleges a violation of Section 504 of the Rehabilitation Act.  Both are asserted against all Defendants.  (Compl. ¶¶ 197-210.)  These claims should be dismissed.

1.  **Title II of the ADA and Section 504 of the Rehabilitation Act do not authorize claims against defendants in their individual capacities.**

Title II of the ADA and Section 504 of the Rehabilitation Act ("RA") both prohibit discrimination on the basis of disability.  Title II of the ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs.  Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities *of a public entity*, or be subjected to discrimination *by any such entity*.

42 U.S.C. § 12132 (emphasis added).  Similarly, the RA provides:

> No otherwise qualified individual with a disability in the United States...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance….

29 U.S.C. § 794(a).  For purposes of the RA, a "program or activity" means all of the operations of "a department, agency… or other instrumentality of a State."  29 U.S.C. § 794(b)(1)(A).  And for purposes of the ADA, "public entity" means any State or local government, any department, agency or other instrumentality of a State.  42 U.S.C. § 12131(1)(A), (B).  Here, the individual Defendants—named in their individual capacities—are not a "public entity" or a "department" or "agency" of the State.  *See* 42 U.S.C. § 12131(1)(A), (B); 29 U.S.C. § 794(b)(1)(A).  As a result, neither Title II of the ADA nor Section 504 of the RA provide for individual capacity suits against state officials.  *See Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Berkery v.*

*Kaplan*, 518 F. App'x 813, 814-15 (11th Cir. 2013) (citation omitted); *Garcia v. S.U.N.Y. Health*

*Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (citations omitted); *Lollar v. Baker*, 196

F.3d 603, 609 (5th Cir. 1999) (citations omitted); *and see Rendelman v. Rouse*, 569 F.3d 182,

188-89 (4th Cir. 2009).  Counts III and IV of the Complaint should be dismissed against the

Individual Capacity Defendants, with prejudice.

     **2.**   **As to the State of Idaho, DHW (including SWITC), and Ms. Newton (in her official capacity), Plaintiffs fail to identify a service, program, or activity they were denied, or any discrimination that occurred, solely by reason of disability.**

To establish a violation of Title II of the ADA, a plaintiff must show that he or she: (1) is

a qualified individual with a disability; (2) was excluded from participation in or otherwise

discriminated against with regard to a public entity's services, programs, or activities; and (3)

such exclusion or discrimination was by reason of his/her disability.  *See Weinreich v. Los*

*Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997) (emphasis omitted)

(citations omitted).  A "qualified individual with a disability" is "an individual with a disability

who, with or without reasonable modifications to rules, policies, or practices, … meets the

essential eligibility requirements for the receipt of services or the participation in programs or

activities provided by a public entity."  42 U.S.C. § 12131(2).

To establish a violation of Section 504 of the RA, a plaintiff must show that he or she: (1)

is a disabled person within the meaning of the RA; (2) is otherwise qualified for the benefit or

services sought; (3) was denied the benefit or services solely by reason of his/her disability; and

(4) the program providing the benefit or services receives federal financial assistance.  *See*

*Weinreich*, 114 F.3d at 978 (footnote omitted) (citations omitted).  "There is no significant

difference in analysis of the rights and obligations created by the ADA and the Rehabilitation

Act."  *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citing 42

U.S.C. § 12133) (remaining citation omitted).  "Thus, courts have applied the same analysis to claims brought under both statutes and courts routinely look to [RA] case law to interpret the rights and obligations created by the ADA" and *vice versa*.  *Id*. (citations omitted).

Moreover, in order to seek damages for intentional discrimination under either Title II of the ADA or the Rehabilitation Act, a plaintiff must show that the Defendants acted with deliberate indifference.  *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001), as *amended on denial of reh'g* (Oct. 11, 2001) (citation omitted).  "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood."  *Id*. at 1139 (citations omitted).

Plaintiffs' allegations with respect to Counts III and IV fail the *Twombly* pleading standard against the State of Idaho, DHW (including SWITC), and Jamie Newton in her official capacity.  For example, Plaintiffs fail to allege what "treatment, support, and services" they were excluded from, and they fail to allege facts that reflect any discrimination alleged to have occurred solely by reason of their disabilities.  And while Plaintiffs seek damages for both "Counts," there are no allegations of fact that would plausibly support a finding of deliberate indifference.  (*See* Compl. ¶¶ 197-210.)  Plaintiffs B.B., McNamar, Pease, Benjamin, and Bloom fail to allege *any* specific facts aimed at Ms. Newton.  (*See* Compl. ¶¶ 88-106, 124-173.)  And the only specific allegation against Ms. Newton in the Complaint is that she "enforced and had knowledge of a pattern and practice at SWITC that the observation log sheets are not accurate and boxes are checked even though actual client checks were not performed."  (Compl. ¶ 119; *see id.* ¶ 71.)  In short, Plaintiff's allegations amount to mere conclusions and recitations of the elements of their claims.  (*See* Compl. ¶¶ 197-210.)  Because the allegations regarding the

remaining Defendants in Counts III and IV are factually deficient, these claims should be dismissed.

### C. Count V should be dismissed with prejudice because the Idaho Human Rights Act does not apply.

Count V alleges that the Individual Capacity Defendants violated the Idaho Human Rights Act ("IHRA"), found at Idaho Code §§ 67-5901, *et seq.* (Compl. ¶¶ 211-214.) This claim fails for a number of reasons.

First, the Individual Capacity Defendants do not fall within the provisions of the IHRA. There are nine different sections that describe various violations of the IHRA based on disability. *See* Idaho Code § 67-5909(1)-(4), (6), (8)-(11). The first four violations apply to instances where an "employer," "employment agency," or "labor organization" takes an adverse employment action. *See* Idaho Code § 67-5909(1)-(4). These sections do not apply because the individual Defendants are not "employers" who have taken an adverse employment action against Plaintiffs. Next, Idaho Code § 67-5909(6) applies to a "person" who "owns, leases or operates a place of public accommodation." But even assuming that SWITC falls within the definition of a "place of public accommodation,"[5] the individual Defendants—named in their individual capacities—do not fall within the definition of those who "own, lease, or operate[]" SWITC.[6] The remaining provisions pertaining to disability under the IHRA are facially inapplicable. *See* Idaho Code § 67-5909(8) and (9) (addressing an owner or person engaged in a real estate transaction or application for financial assistance with a real estate transaction); Idaho Code §

---

[5] Defendants do not admit that SWITC is a public accommodation within the scope of the IHRA.
[6] Plaintiffs have not pled sufficient facts to put Defendants on notice of a claim under Idaho Code § 67-5909(6). Instead, their allegations are nothing more than legal conclusions.

67-5909(10) (addressing a written instrument for real property); Idaho Code § 67-5909(11)

(addressing a person inducing a real estate transaction).

Second, in order to bring a lawsuit under the IHRA, a plaintiff must first file a complaint

with the Commission on Human Rights.  Idaho Code § 67-5908(2).  This is a condition

precedent to litigation.  *Id.*  Here, Plaintiffs have not alleged that they have complied with this

condition precedent, and as a result, cannot proceed with a lawsuit alleging an IHRA violation.

In sum, because the IHRA does not apply to the Individual Capacity Defendants, and

because Plaintiffs have failed to comply with the condition precedent in the IHRA, Count V fails

to state a claim against Defendants upon which relief should be granted, and it should be

dismissed with prejudice.

### D. Counts VI, VII, VIII, and IX should be dismissed with prejudice because they are not legally plausible.

Counts VI, VII, VIII, and IX appear to allege 42 U.S.C. § 1983 violations for negligence

under the doctrine of negligence per se, using federal and state regulations as the source of the

duty.  (Compl. ¶¶ 215-247.)  These claims are not legally plausible and should be dismissed with

prejudice.  Section 1983 imposes liability for violations of rights protected by the Constitution

and federal statutes, not for violations of duties of care arising out of tort law.  *Baker v.

McCollan*, 443 U.S. 137, 145, n.3 (1979).  "Remedy for the latter type of injury must be sought

in state court under traditional tort-law principles."  *Id*. at 146.  Similarly, 42 U.S.C. § 1983

cannot be used to enforce state law claims.  *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1391

(9th Cir. 1997).  Here, Plaintiffs' attempt to use Section 1983 as a means to enforce a negligence

claim, using federal and state regulations as the source of the duty, fails as a matter of law.  As

such, Counts VI, VII, VIII and IX should be dismissed with prejudice.

To the extent Plaintiffs seek to bring a private cause of action under Section 1983 to enforce alleged violations of regulations with Counts VI, VII, VIII, and IX, the Ninth Circuit has expressly held "an agency regulation cannot create individual rights enforceable through § 1983." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 935-36 (9th Cir. 2003); *Price v. City of Stockton*, 390 F.3d 1105, 1112 n.6 (9th Cir. 2004) ("It is now well settled that regulations *alone* cannot create rights enforceable through either an implied right of action or Section 1983." (Citations omitted.)).  For this reason, even if Counts VI, VII, VIII, and IX are intended to use Section 1983 to enforce agency regulations outside of the context of a negligence action, they still fail and should be dismissed with prejudice.

### E.  Counts X, XI, XII, XIII, XV, XVI, and XVIII should be dismissed against the Individual Capacity Defendants, because Plaintiffs fail to plead with particularity any facts giving rise to liability for those claims.

As stated above, a complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 1974.  With respect to the claims against Mr. King and Mses. Newton, Combs and Luper, Plaintiffs' Complaint falls far short of pleading sufficient facts to state claims for relief for negligence per se, assault, battery, intentional infliction of emotional distress, misrepresentation, and consumer fraud under Counts X, XI, XII, XIII, XV, XVI, and XVIII.

### 1.  Counts X and XI – Negligence Per Se.

Under Counts X and XI, Plaintiffs allege that Mr. King and Mses. Newton, Combs, and Luper committed negligence per se when they allegedly violated Idaho Code §§ 16-1605 and 39-5303.  (Compl. ¶¶ 248-261.)

Idaho Code § 16-1605(1) requires that any "person having reason to believe that a child under the age of eighteen (18) has been abused, abandoned or neglected or who observes the

child being subjected to conditions or circumstances that would reasonably result in abuse, abandonment or neglect shall report or cause to be reported within twenty-four (24) hours such conditions or circumstances to the proper law enforcement agency or the department."

Idaho Code § 39-5303(1) requires that any employee of a "state-licensed or certified residential facility serving vulnerable adults…who has reasonable cause to believe that a vulnerable adult is being or has been abused, neglected or exploited shall immediately report such information to the commission."

To recover damages under a negligence per se theory, a plaintiff must prove four elements:

> (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury.

*O'Guin v. Bingham County*, 122 P.3d 308, 311 (Idaho 2005) (citation omitted).

As such, for Plaintiffs to sufficiently plead negligence per se for violating Idaho's abuse reporting statutes for vulnerable adults and children, Plaintiffs must allege some facts suggesting that Mr. King or Mses. Newton, Combs or Luper failed to report abuse.  Plaintiffs must further allege that Mr. King's and Mses. Newton, Combs or Luper's failure to report abuse was the proximate cause of Plaintiffs' injuries.  Yet, nowhere in the Complaint is it factually alleged that Mr. King or Mses. Newton, Combs or Luper failed to report abuse to the Idaho Commission on Aging, to DHW or to law enforcement, or that the Plaintiffs suffered any specific injury as a result of that failure.  At the very least, the individual Defendants need to know the specific abuse or occurrence that they are alleged to have failed to report in order to defend themselves against this claim.  The Court should dismiss Counts X and XI.

2. __Count XII – Assault.__

There are no facts alleged in the Complaint against Mr. King or Mses. Newton, Combs or Luper that give rise to a claim for assault.  "Assault is an unlawful threat or offer to do bodily harm or injury to another."  *Miller v. Idaho State Patrol*, 252 P.3d 1274, 1289 (Idaho 2011) (alteration omitted) (citation omitted).  Idaho Civil Jury Instruction 4.30 properly states the elements of civil assault.  Idaho Civil Jury Instruction 4.30 provides as follows:

> The plaintiff has the burden of proving each of the following propositions:
> 1. The defendant acted intending to cause harmful or offensive contact with the person of the plaintiff or a third person, or an immediate fear of such contact; and
> 2.  As a result, the plaintiff feared that such *contact* was imminent.

(Emphasis added.)

Plaintiffs allege under Count XII that Defendants are liable for assault for "inflicting continuous and ongoing abuse, neglect and mistreatment as described more fully herein[.]" (Compl. ¶ 264.)  However, the Complaint fails to describe any facts where Mr. King or Mses. Newton, Combs or Luper intended to or made any gesture to cause harmful or offensive *contact* with even one Plaintiff, or that said intent put a Plaintiff in fear of imminent and harmful *contact*. *See* Idaho Civ. Jury Instruction 4.30.  Plaintiffs simply do not allege any facts suggesting that Mr. King or Mses. Newton, Combs or Luper intended contact whatsoever with Plaintiffs.

In looking at the facts actually alleged against Ms. Newton, it cannot be argued that her alleged enforcement or knowledge of false client observation log sheets was in any way an intent to cause harmful or offensive *contact* with a Plaintiff.  Nor could it be said that any particular Plaintiff knew of Ms. Newton's alleged actions and was put in imminent fear of contact by Ms. Newton's actions.  The same is true with respect to Mses. Combs' and Luper's failure to conduct a bed check of Drew Rinehart.

The only allegation against Mr. King in the Complaint is that he allegedly failed to intervene when Defendant Jason Miller allegedly slammed Plaintiff Nathan Benjamin's nose into a counter.  (*See* Compl. ¶ 163.)  But Mr. King's alleged failure to intervene could not in any way be seen as an intent by Mr. King to make physical contact with Plaintiff Benjamin.  There is no suggestion in the Complaint that Mr. King made any physical bodily movement toward Plaintiff Benjamin suggesting that he intended to cause harmful contact with Plaintiff Benjamin.  Furthermore, it has not been alleged, nor could it be plausibly alleged, that Mr. King's mere observation of the alleged incident caused Plaintiff Benjamin imminent fear of harmful contact by Mr. King.

It is not enough for Plaintiffs to generally state in the Complaint that Mr. King and Mses. Newton, Combs and Luper inflicted continuous and ongoing abuse without providing specific facts that could give rise to an assault.  Count XII should be dismissed.

### 3.  Count XIII – Battery.

"Civil battery consists of an intentional, unpermitted contact upon the person of another which is either unlawful, harmful or offensive." *Neal v. Neal*, 873 P.2d 871, 876 (Idaho 1994) (citation omitted); *Mueller v. Auker*, 700 F.3d 1180, 1192 (9th Cir. 2012) (citation omitted).

Under Count XIII, Plaintiffs generally state that "Defendants intentionally caused harmful or offensive contact with the person of Plaintiffs…."  (Compl. ¶ 269.)  Plaintiffs do not allege any specific facts where Mr. King or Mses. Newton, Combs or Luper made physical contact with Plaintiffs.  Without even alleging a physical contact by Mr. King or Mses. Newton, Combs or Luper against any Plaintiff, there is no plausible way that Defendants could be put on notice of the wrongdoing alleged against them to support a claim for battery.  Count XIII should be dismissed.

### 4.  <u>Count XV – Intentional Infliction of Emotional Distress</u>.

"In order to establish a claim of intentional infliction of emotional distress, the plaintiff must prove that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) there was a causal connection between the defendant's wrongful conduct and the plaintiff's emotional distress; and (4) the emotional distress was severe." *James v. City of Boise*, 376 P.3d 33, 51 (Idaho 2016) (citation omitted).  "Additionally, there must be a physical manifestation of the plaintiff's emotional injury, which is designed to provide a degree of genuineness that claims of mental harm are not imagined." *Frogley v. Meridian Joint Sch. Dist. No. 2*, 314 P.3d 613, 624 (Idaho 2013) (citation omitted).

Under Count XV, Plaintiffs allege that Defendants "inflict[ed] continuous and ongoing abuse, neglect and mistreatment as described more fully herein" and that "Defendants acted with the intent to commit wrongful or unlawful acts without justification or excuse and/or intentionally and knowingly created an unreasonable risk of harm to others which involved a high degree of probability that harm would result."  (Compl. ¶ 284.)  Again, these general allegations do not put Mr. King or Mses. Newton, Combs or Luper on notice of any wrongdoing, which on its face would amount to intentional infliction of emotional distress, nor do these allegations indicate what sort of physical manifestation each Plaintiff suffered.

With respect to Mses. Newton, Combs, and Luper, the specific facts alleged against them relate to Ms. Newton's alleged knowledge of falsified observation log sheets and Mses. Luper's and Combs's failure to observe Drew Rinehart on the night he died.  (*See id.* ¶¶ 119, 121.) Plaintiffs fail to plead facts suggesting that Plaintiffs had any knowledge of the alleged falsified observation log sheets, let alone that those log sheets caused them emotional distress.  Nor could

it be argued that Mr. Rinehart, deceased, had any knowledge that Mses. Luper and Combs failed to conduct a bed check on him while he slept or that such failure caused him emotional distress.

While it could be argued that Mr. King's alleged failure to intervene when another staff member allegedly battered Plaintiff Benjamin was an intentional, wrongful conduct, Plaintiffs fail to plead any facts suggesting that Plaintiff Benjamin had any knowledge that Mr. King observed and failed to intervene.  (*See id.* ¶ 163.)  Plaintiffs further do not plead facts suggesting that Plaintiff Benjamin suffered any emotional distress from Mr. King's alleged failure to intervene.

Notably, Plaintiffs' claims of battery against Mr. King and Mses. Newton, Combs, and Luper are based on the same set of facts.  The basis of a claim for intentional infliction of emotional distress is to allow a person who *was not* physically injured by the defendant, but who experienced emotional distress, to recover.  As one authority states:

> A plaintiff alleging negligent infliction of emotional distress who has not suffered a physical injury must demonstrate through expert medical or scientific proof that he or she has suffered a "severe emotional injury," and such injury occurs if a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.

38 Am. Jur. 2d Fright, Shock, Etc. § 11 (2d. ed. Sept. 2019 update) (footnotes omitted).  The reason this separate cause of action exists is that as a matter of law, emotional distress damages are included as general damages in personal injury cases.  Therefore, if a plaintiff seeks general damages for emotional distress related to personal injury as well as for intentional infliction of emotional distress, he takes a double recovery.  In this case, Plaintiffs cannot plead both battery and an intentional infliction of emotional distress based on the same set of operative facts.

Without knowing how Defendants allegedly intentionally caused emotional distress to Plaintiffs or which particular Plaintiffs suffered emotional distress, Mr. King and Mses. Newton,

Combs, and Luper cannot defend against an allegation of intentional infliction of emotional distress.  As such, the Court should dismiss Count XV.

### 5.  <u>**Count XVI – Misrepresentation.**</u>

Under Count XVI, Plaintiffs allege that Mr. King and Mses. Newton, Combs, and Luper are liable for misrepresentation through their silence, claiming that they had an obligation to disclose the falsities of SWITC's Mission Statement.  (*See* Compl. ¶¶ 286-296.)  In Idaho, misrepresentation is also referred to as fraud.  *See Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 996 P.2d 303, 308 (Idaho 2000) (citations omitted); *G & M Farms v. Funk Irr. Co.*, 808 P.2d 851, 855 (Idaho 1991) (citations omitted).

When a party alleges fraud, Federal Rule of Civil Procedure 9(b) requires specificity above and beyond that required by Rule 8.  Fed. R. Civ. P. 9(b).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  *Id*.  "This means the plaintiff must allege 'the who, what, when, where, and how of the misconduct charged[.]'"  *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (citation omitted). "Broad allegations that include no particularized supporting detail do not suffice[.]" *Id*. (citation omitted).

In order to prove misrepresentation or fraud, a plaintiff must prove, and also plead, the following elements:  (1) a statement of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent to induce reliance; (6) the hearer's ignorance of its falsity; (7) reliance by the hearer; (8) the hearer's right to rely thereon; (9) consequent and proximate injury. *Humphries v. Becker*, 366 P.3d 1088, 1096 (Idaho 2016).

Plaintiffs allege that Defendants made representations through a Mission Statement of SWITC, for which they cite "DFW [sic] Facts, Figures and Trends (2018-2019)."  (Compl. ¶

287.)  The Mission Statement referenced in the Complaint does indeed come from DHW's Facts

Figures and Trends 2018-2019, which is an annual report and overview of DHW's services from

its Director, Dave Jeppesen.[7]  Plaintiffs quote this report, stating:

> Defendants have represented the SWITC program as follows:
>
> The mission of SWITC, located in Nampa, is to provide services as a short-term
> therapeutic stabilization and transition center for clients, focused mostly on those
> who have been committed to the department because of criminal activity or severe
> behaviors. SWITC has become a stabilization center for individuals with intricate
> and challenging needs, with the goal of transitioning them to effective community
> placements for long-term services as quickly as possible.

(Compl. ¶ 287 (citing DFW [sic] Facts, Figures and Trends (2018-2019) at 51).)

Plaintiffs go on to quote a second "mission" of SWITC, and the Complaint cites this

"mission" as coming from page 48 of the same "DFW [sic] Facts, Figures and Trends (2018-

2019)" report.  (*Id.* ¶ 287.)  However, the referenced statement is not contained on page 48 of the

report, and so the source of this statement is unknown.

Nevertheless, a mission statement is not a statement of fact in which any reasonable

person could rely on its truth.  A mission statement is defined as "something that states the

purpose or goal of a business or organization." *Mission statement*, Merriam-Webster, Inc.

(2019), https://www.merriam-webster.com/dictionary/mission%20statement.  As such, by

definition, the referenced Mission Statement, that outlines SWITC's goals, is not a statement of

fact to which Plaintiffs may rely in claiming misrepresentation/fraud.  In order to state a

cognizable claim for misrepresentation, at the very least, Plaintiffs must plead facts indicating

that they relied on a statement of purported fact.  *See Humphries*, 366 P.3d at 1096.

---

[7] *See* Idaho Dep't of Health and Welfare, Facts, Figures & Trends 2018-2019 (Jan. 2019),
https://healthandwelfare.idaho.gov/Portals/0/AboutUs/Publications/FFT2018-2019.pdf

But even assuming the Mission Statement was a statement of purported fact, Plaintiffs fail to plead with particularity any additional elements of fraud required by Rule 9. Applying the additional elements of misrepresentation listed above, Plaintiffs fail to point out that Defendants had knowledge of the Mission Statement's falsity; that Defendants intended through their silence that the Mission Statement should be acted on by Plaintiffs; that Plaintiffs were ignorant of the falsities in the Mission Statement; or that Plaintiffs relied on the truth of the Mission Statement in some manner. Finally, Plaintiffs fail to allege what injuries they suffered as a result of their reliance on the Mission Statement.

Because of these pleading deficiencies, as well as the fact that Plaintiffs' reliance on the truth of the Mission Statement cannot give rise to a misrepresentation claim, Count XVI should be dismissed with prejudice.

### 6. **Count XVIII – Consumer Fraud and Deceptive Trade Practices**.

Plaintiffs have not pled a viable cause of action under the Idaho Consumer Protection Act ("ICPA"), found at Idaho Code § 48-601 *et seq*., against Mr. King or Mses. Newton, Combs or Luper because there is no allegation that Plaintiffs: (1) purchased or leased goods or services from Mr. King or Mses. Newton, Combs or Luper; and (2) suffered an ascertainable loss of money or property.

The purpose of the ICPA is to protect consumers from unfair and deceptive practices. *Doble v. Interstate Amusements, Inc*., 372 P.3d 362, 364 (Idaho 2016) (citation omitted). The ICPA provides that "'(a)ny person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by ... (the) act,' may file an action for damages." *Haskin v. Glass*, 640 P.2d 1186, 1189 (Idaho Ct. App. 1982)

(citing Idaho Code § 48-608(1)).   In order to have standing under the ICPA, "the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively." *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) (citations omitted).  The ICPA does not apply "to a merely contemplated transaction, where there was no contract." *Haskin*, 640 P.2d at 1189; *Bryntesen v. Camp Auto., Inc.*, No. 2:13-cv-00491-BLW, 2015 WL 3616970, at *11 (D. Idaho Jun. 9, 2015) (citation omitted).

Plaintiffs allege that Mr. King and Mses. Newton, Combs, and Luper are liable under Idaho Code §§ 48-603 and 48-608(1) and (2).  Idaho Code § 48-603 outlines 19 different forms of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…."  Idaho Code § 48-608(1) and (2) outlines the actual and punitive damages available to persons who suffer an "ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by this chapter…."  Plaintiffs' allegations are deficient.

First, Plaintiffs fail to allege that they are consumers who "purchased or lease[d] goods or services" from either Mr. King or Mses. Newton, Combs or Luper.

Second, by failing to allege that Plaintiffs had a contractual relationship with the Defendants, Plaintiffs fail to demonstrate standing under the ICPA.  As indicated in the Complaint, Ms. Newton was the Administrator of SWITC and Mr. King and Mses. Combs and Luper were merely employees at SWITC.  (*See* Compl. ¶¶ 28, 32, 34-35.)  There is no contractual relationship between Plaintiffs who resided at SWITC and the employees who worked there.

Third, Plaintiffs do not identify any actionable wrongdoing on the part of Mr. King or Mses. Newton, Combs or Luper that would fall within the purview of the ICPA.  Rather, they

merely allege that Defendants, through their silence, misrepresented the Mission Statement of SWITC. (*Id.* ¶ 310-311.) Plaintiffs' Complaint does not identify which of the 19 proscribed acts under Idaho Code § 48-603 were violated by Mr. King or Mses. Newton, Combs or Luper.

Finally, Plaintiffs fail to sufficiently plead they suffered any ascertainable loss of money or property. Plaintiffs allege the following loss: "[d]ue to the conduct and practices of SWITC and DHW, residents suffered a loss of assets in that their existing skills, including coping skills and daily activities, were degraded and lost." (*Id.* ¶ 315.) Such a vague explanation of loss is not an ascertainable loss of money or property, real or personal.

For the reasons stated, Count XVIII should be dismissed with prejudice because Plaintiffs have not, and cannot, state a cognizable claim under the ICPA.

**F. Count XVII should be dismissed with prejudice because Plaintiffs do not have a cognizable claim for negligent misrepresentation against Mr. King or Mses. Newton, Combs or Luper.**

Plaintiffs further allege *negligent* misrepresentation based again on their reliance on the Mission Statement contained in the IDHW Fact, Figures and Trends 2018-2019 report. (*Id.* ¶ 298.) The Idaho Supreme Court has strictly and narrowly confined the tort of negligent misrepresentation to professional relationships *involving an accountant*. *Duffin v. Idaho Crop Imp. Ass'n*, 895 P.2d 1195, 1203 (Idaho 1995); *Mannos v. Moss*, 155 P.3d 1166, 1174 (Idaho 2007) (citation omitted). As alleged in Plaintiffs' Complaint, Mr. King and Mses. Combs and Luper were staff employees at SWITC. (Compl. ¶¶ 32, 34-35.) And Ms. Newton is the current Administrative Director of SWITC. (*Id.* ¶ 28.) Because Mr. King and Mses. Newton, Combs, and Luper are not accountants nor do they have "professional relationships involving an accountant" with Plaintiffs, Plaintiffs' claim for negligent misrepresentation is not cognizable against them. As such, Count XVII should be dismissed with prejudice.

**G. Counts XII, XIII, and XVI should be dismissed with prejudice because Mr. King and Mses. Newton, Combs, and Luper have immunity under the Idaho Tort Claims Act.**

In the instant matter, Mr. King and Mses. Newton, Combs, and Luper have immunity under the ITCA for assault (Count XII), battery (Count XIII) and misrepresentation (XVI).

As a general rule, the State of Idaho has sovereign immunity from suit and thus cannot be sued without its consent. *See Grant Constr. Co. v. Burns*, 443 P.2d 1005, 1009 (Idaho 1968) (citations omitted); *accord Sanchez v. State, Dep't of Corr.*, 141 P.3d 1108, 1113 (Idaho 2006). The Idaho Tort Claims Act ("ITCA") provides limited waiver of sovereign immunity, allowing only certain causes of action against the State and its employees for negligent or wrongful acts and omissions. *Woodworth v. State ex rel. Idaho Transp. Bd.*, 298 P.3d 1066, 1068 (Idaho 2013) (citation omitted). Nonetheless, there are specific situations in which sovereign immunity is *not* waived by the State and its employees under the ITCA. *See* Idaho Code §§ 6-904, 6-904A, 6-904B. For example, a government entity and its employees while acting in the course and scope of their employment and without malice or criminal intent *shall no*t be liable for any claim which arises out of assault, battery or misrepresentation. Idaho Code § 6-904(3); *James*, 376 P.3d at 49. In other words, employees are entitled to immunity for assault, battery, and misrepresentation unless the assault, battery, and misrepresentation is committed with malice or criminal intent and outside the course and scope of their employment.

In *James*, the Supreme Court considered what is meant by malice or criminal intent under Idaho Code § 6-904(3). The court explained that it is not simply the *mens rea* of the particular crime but is rather "the intentional commission of what the person knows to be a crime." *James*, 376 P.3d at 51. In other words, the employee is entitled to immunity unless it can be shown that he or she acted with specific intent to commit the crime of assault, battery or misrepresentation.

This of course requires a showing of more than the *mens rea* of the crimes of assault and battery, neither of which are specific intent crimes.  Rather, it requires in this case that Plaintiffs allege in their Complaint that Mr. King and Mses. Newton, Combs, and Luper acted with the specific intent to batter, assault, and misrepresent to Plaintiffs.

Similarly, if a claim for battery, assault or misrepresentation is barred under ITCA, then it is also barred when couched as separate claim, such as intentional infliction of emotional distress.  A "tort claim need only 'arise out of' the type of conduct listed in Idaho Code section 6-904 [to be exempted from government liability], which means it must originate or stem from such conduct.  Immunity under the statute is not abrogated by changing the legal theory upon which a claim for recovery is sought."  *James*, 376 P.3d at 51 (citing *Woodworth*, 298 at 1069); and then citing *Intermountain Constr., Inc. v. City of Ammon*, 841 P.2d 1082, 1084 (Idaho 1992)).

Not only does Plaintiffs' Complaint fail to sufficiently plead the elements of battery, assault, and misrepresentation, but it also fails to allege *any* facts that Defendants acted with the specific intent to commit the crimes of assault, battery, and misrepresentation.  And Plaintiffs' Complaint fails to allege that Mr. King or Mses. Newton, Combs or Luper acted outside the scope of their employment in committing acts of assault, battery, and misrepresentation; rather Plaintiffs specifically allege that all material times, Defendants were employees at SWITC. (Compl. ¶¶ 28, 32, 34-35.)  The generalized allegations regarding Ms. Newton's knowledge of observation log sheets not being accurate does not in any way suggest that she acted with criminal intent of assault, battery, and misrepresentation.  The same can be said of Ms. Combs's and Ms. Luper's failure to conduct bed checks on Drew Rinehart, and Mr. King's failure to intervene as a bystander during an alleged battery of Plaintiff Benjamin.  As such, Defendants

are entitled to immunity under Idaho Code § 6–904(3) on the face of the Complaint.  Because

Plaintiffs have pled no facts giving rise to an exception to immunity under Idaho Code § 6-

904(3), Counts XII, XIII and XVI should be dismissed with prejudice.

**H.  Count XIX should be dismissed as to all Plaintiffs because they lack standing.**

Plaintiffs allege a wrongful death claim against Mses. Newton, Combs, and Luper under

Count XIX.  Under Idaho's wrongful death statute, Idaho Code § 5-311, when the death of a

person is caused by the wrongful act or neglect of another, his "heirs" or personal representatives

"on their behalf" may maintain an action for damages against the person causing the death.

Idaho Code § 5-311.  That statute states, in relevant part:

> (1)   When the death of a person is caused by the wrongful act or neglect of
> another, *his or her heirs* or personal representatives *on their behalf* may maintain
> an action for damages against the person causing the death, or in case of the death
> of such wrongdoer, against the personal representative of such wrongdoer,
> whether the wrongdoer dies before or after the death of the person injured.  If any
> other person is responsible for any such wrongful act or neglect, the action may
> also be maintained against such other person, or in case of his or her death, his or
> her personal representatives.  In every action under this section, such damages
> may be given as under all the circumstances of the case as may be just.
>
> (2)   For the purposes of subsection (1) of this section, and subsection (2) of
> section 5-327, Idaho Code, "heirs" means:
>
> (a)   Those persons who would be entitled to succeed to the property of the
> decedent according to the provisions of subsection (22) of section 15-1-201, Idaho
> Code.
>
> (b)   Whether or not qualified under subsection (2)(a) of this section, the
> decedent's spouse, children, stepchildren, parents, *and, when partly or wholly
> dependent on the decedent for support or services, any blood relatives* and
> adoptive brothers and sisters.  It includes the illegitimate child of a mother, but
> not the illegitimate child of the father unless the father has recognized a
> responsibility for the child's support.
>
> > 1.   "Support" includes contributions in kind as well as money.
> > 2.   "Services" means tasks, usually of a household nature, regularly
> > performed by the decedent that will be a necessary expense to the heirs of
> > the decedent. These services may vary according to the identity of the

> decedent and heir and shall be determined under the particular facts of
> each case.

Idaho Code § 5-311(1), (2)(a), (2)(b)(1), (2)(b)(2) (emphasis added).

With regard to the claim for Drew Rinehart's death, none of the Plaintiffs are heirs entitled to maintain an action under Idaho Code § 5-311. And simply being a personal representative does not give one standing to assert a wrongful death claim. "[A]n action may be maintained for wrongful death of a person *by the decedent's heirs* or the decedent's personal representative *on behalf of the heirs*." *Hagy v. State*, 51 P.3d 432, 436-37 (Idaho Ct. App. 2002) (emphasis added). Additionally, Plaintiff Foruria has not pled, nor will she be able to prove, that she is a blood relative who was "partly or wholly dependent on the decedent for support or services." Mr. Rinehart was residing at SWITC—which is funded by Medicaid—at the time of his death. Moreover, Plaintiffs state that Mr. Rinehart lived with his grandparents, then "assisted living homes," and then "became a ward of the state" before being "involuntarily committed to SWITC." (Compl. ¶¶ 110, 112, 116.) Count XIX should be dismissed because no Plaintiff has standing to assert a claim for the wrongful death of Drew Rinehart.

## I.   B.B.'s claims should be dismissed because there are insufficient allegations against Defendants regarding his claims.

All of the claims asserted by Plaintiff B.B. should be dismissed because he fails to allege sufficient facts to put Defendants on notice of his claims. None of the allegations asserted by B.B. refer to any of the individually named Defendants. And the two claims asserted against the entity State Defendants (the State of Idaho and DHW, including SWITC), which are Counts III and IV, fail to identify any service, program, or activity he was allegedly excluded from, or where discrimination occurred, solely by reason of his disability. As a result, his claims are factually deficient and should be dismissed.

**J.   All claims against Defendant Luke Brisbane should be dismissed.**

Plaintiffs have named Luke Brisbane as a defendant in this case.  However, the only "Luke" served in this case by Plaintiffs was Luke Gushwa.  (Dkt. 26.)  An individual by the name of Luke Brisbane has not been served.  Luke Gushwa is not a named defendant in this case.  To the extent that Luke Brisbane is wrongfully named in this lawsuit, all claims against him should be dismissed pursuant to Rule 12(b)(6).

## V.   CONCLUSION

Based on the foregoing, Defendants' motion to dismiss should be granted.  Counts II through IX, and Counts XII, XIII, and XVI through XVIII (all against the Individual Capacity Defendants) should be dismissed in their entirety, with prejudice, because they are not legally plausible.  Other counts, including the claims alleged by Plaintiff B.B., Counts III and IV (against the State of Idaho, DHW, and Jamie Newton), and Counts X, XI, and XV should be dismissed because they suffer from factual deficiencies which fail to put Defendants on notice of such claims.  Count XIX should be dismissed for a lack of standing, and the claims alleged against Luke Brisbane should be dismissed because no such person has been served.

DATED: October 18, 2019.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

GJORDING FOUSER, PLLC


By _/s/ Cynthia Yee-Wallace_____
    CYNTHIA YEE-WALLACE
    Deputy Attorney General

By _/s/ Trudy Fouser_____
    TRUDY FOUSER, of the firm
    Special Deputy Attorney General


By _/s/ Megan A. Larrondo_____
    MEGAN A. LARRONDO
    Deputy Attorney General

By _/s/ Emma Nowacki_____
    EMMA NOWACKI, of the firm

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Charlene K. Quade
char@charquadelaw.com

Shamus P. O'Meara
spomeara@olwklaw.com

Sean R. Beck
sean@charquadelaw.com

Mark R. Azman
mrazman@olwklaw.com

/s/ *Cynthia Yee-Wallace*
CYNTHIA YEE-WALLACE
Deputy Attorney General